Evans v. Erie Insurance Co.

C.P. of Allegheny County, no. AR97-3464.

*Steven P. Engel,* for plaintiff.
*Scott D. Glassmith,* for defendant Erie Insurance Co.
*Rebecca N. Mann,* for defendant Nationwide Insurance Co.

WETTICK, *J.,* February 25, 1998—This lawsuit arises out of an August 1, 1993 automobile accident in which plaintiff, a pedestrian, was struck by an automobile insured by Erie Insurance Company. Plaintiff did not own a vehicle at the time of the accident; he was not the named insured on any policy of insurance; and he was not the occupant of any motor vehicle. He submitted a claim for first-party benefits to Erie, this being the insurance carrier of the only motor vehicle involved in the accident. Erie denied coverage on the ground that plaintiff was insured under a Nationwide Insurance Company policy that covered a vehicle of plaintiff's daughter.

Under the Pennsylvania Motor Vehicle Financial Responsibility Law (75 Pa.C.S. §1713), Nationwide was obligated to provide first-party benefits if plaintiff resided with his daughter. Otherwise, Erie was obligated to provide first-party benefits.

Plaintiff has filed a two-count complaint based on the failure of the insurance companies to provide first-party benefits. Count I seeks first-party benefits and counsel fees under the Motor Vehicle Financial Responsibility Law. Count II raises a claim based on 42 Pa.C.S. §8371 which provides for interest on the award of the claim in an amount equal to the prime rate plus 3 percent, an award of punitive damages, and the as-

sessment of attorney fees where an insurer has acted in bad faith toward the insured.

Erie has filed preliminary objections seeking dismissal of plaintiff's section 8371 claim on the ground that plaintiff is not an insured under any insurance policy. Section 8371 reads as follows:

*"Actions on insurance policies*

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date that the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

Erie's argument is straightforward: The language of section 8371 requires that an insurer have acted in bad faith "toward the insured" in an action "arising under an insurance policy." The Erie policy provides coverage to the policyholder, any relative of the policyholder residing in the policyholder's household, any minor in the custody of either the policyholder or a relative residing in the residence and any individual specifically named in the policy as an insured. Erie correctly states that plaintiff does not come within its definition of "insured." Thus, Erie contends that any action that it took with respect to plaintiff is not an action "toward the insured" within the meaning of section 8371.

However, the issue of whether an automobile accident victim who does not come within the policy's definition of an insured may sue under section 8371 is more

complicated, because the Motor Vehicle Financial Responsibility Law creates a relationship between automobile accident victims who are not insureds and automobile insurance companies that is identical to the relationship between an automobile accident victim who comes within the policy's definition of an insured and the victim's insurance company.

I begin by looking at my previous opinions governing the Motor Vehicle Financial Responsibility Law that have a bearing on this question.[1]

In *Lehman v. State Farm Insurance Co.*, 140 P.L.J. 78, 84-86 (1991), the insurance company argued that an automobile accident victim who comes within the policy's definition of an insured has no standing to bring a lawsuit for claims for the reasonable costs of his or her medical services because under the Motor Vehicle Financial Responsibility Law a medical provider must look to the insurance company rather than to the insured for payment of its services. I rejected this argument because an insurance company's refusal to pay is likely to prevent the insured from receiving future medical services.

"The insured cannot rely on the medical providers to protect the insured's interests in obtaining insurance coverage for future treatment. Frequently, it is not worthwhile for the medical provider to seek a PRO re-determination or to institute litigation. From a financial standpoint, it makes sense for the provider to give up on the claim and to terminate the treatment. The insured, on the other hand, may have a substantial incentive to challenge the denial of the claim because of his

---

1. None of these opinions is inconsistent with existing appellate court case law.

or her perceived need for substantial treatment in the future." [2]

In *Taylor v. Nationwide Insurance Company*, 35 D.&C.4th 101 (1997), and *Knox v. Nationwide Insurance Group*, 140 P.L.J. 185 (1992), I ruled that section 8371 applies to lawsuits to recover first-party benefits under the Motor Vehicle Financial Responsibility Law. In the *Taylor* opinion, I reviewed the appellate court case law following my *Knox* ruling— *Okkerse v. Prudential Property and Casualty Insurance Co.,* 425 Pa. Super. 396, 625 A.2d 663 (1993), and *Barnum v. State Farm Mutual Insurance Co.*, 430 Pa. Super. 488, 635 A.2d 155 (1993), *rev'd,* 539 Pa. 673, 652 A.2d 1319 (1994).

The right of an automobile accident victim to recover benefits under an automobile insurance policy is not governed by an insurance policy; rather, it is governed by 75 Pa.C.S. §1713(a) which reads as follows:

"(a) *General rule.*—Except as provided in section 1714 (relating to ineligible claimants), a person who suffers injury arising out of the maintenance or use of a motor vehicle shall recover first-party benefits against applicable insurance coverage in the following order of priority:

"(1) For a named insured, the policy on which he is the named insured.

"(2) For an insured, the policy covering the insured.

---

2. Consider, for example, an automobile accident victim who requires a hip operation. The insurance company agrees that a hip operation is needed but denies coverage on the ground that the medical condition creating the need for this operation was not caused by the automobile accident. In this instance, it is unrealistic to assume that a medical provider will perform the operation unless the insured has a method of payment other than the submission of the claim to the automobile insurance carrier.

"(3) For the occupants of an insured motor vehicle, the policy on that motor vehicle.

"(4) For a person who is not the occupant of a motor vehicle, the policy on any motor vehicle involved in the accident. For the purpose of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident unless it was parked so as to cause unreasonable risk of injury."

The controlling issue in this case is whether an insured under 42 Pa.C.S. §8371 includes any automobile accident victim who is entitled to recover first-party benefits against applicable insurance coverage under 75 Pa.C.S. §1713 or whether the protections of section 8371 apply only to an automobile accident victim who is entitled to recover first-party benefits against applicable insurance coverage under section 1713(a)(1) and section 1713(a)(2).

The Motor Vehicle Financial Responsibility Law does not treat a section 1713(a)(4) automobile accident victim in any different fashion from an automobile accident victim who is either a named insured or an insured. The section 1713(a)(4) victim cannot look to tort law to recover payment of his or her medical expenses; this automobile accident victim can look only to the insurance company that is mandated to provide coverage.

Medical providers who treat the section 1713(a)(4) victim are governed by the same provisions of the Motor Vehicle Financial Responsibility Law that govern their treatment of a named insured or an insured. The payment limitations of this legislation apply to these medical providers (75 Pa.C.S. §1797(a)). These medical providers are required to bill the insurance carrier for the amount due; the provider may not bill the section 1713(a)(4) automobile victim for services or otherwise

attempt to collect from this victim the difference between the provider's full charge and the amount paid by the insurer (75 Pa.C.S. §1797(a)). Furthermore, provisions of section 1797(b), governing situations in which the insurance company questions the reasonableness or necessity of medical treatment, apply to medical providers for section 1713(a)(4) victims. If it is ultimately determined by a peer review organization or a court that the medical provider has provided unnecessary services or that future services will be unnecessary, or both, the provider may not collect payment from anyone for the medically unnecessary treatment (75 Pa.C.S. §1797(b)(7)).

The purpose of section 8371 is to protect persons who are entitled to insurance protection. Under the Motor Vehicle Financial Responsibility Law, plaintiff cannot recover against Erie's insured through a tort action; the rights of plaintiff and plaintiff's medical providers are governed by the provisions of the Motor Vehicle Financial Responsibility Law. Plaintiff is as dependent upon the good faith of the insurance company mandated to provide insurance coverage under section 1713(a)(4) as is a named insured or an insured under a motor vehicle policy. Consequently, there is no reason why the legislature would not have intended for section 8371 to reach any automobile vehicle victim entitled to first-party benefits under applicable insurance coverage pursuant to the provisions of the Motor Vehicle Financial Responsibility Law.

This ruling that plaintiff may pursue a section 8371 claim based on a bad faith refusal to provide first-party benefits is not inconsistent with my ruling in *Taylor v. Nationwide Insurance Co., supra.* In *Taylor,* I ruled that a medical provider may not sue under section 8371 for the following reasons: (1) The automobile accident

victim can bring a section 8371 claim based on the insurance company's refusal, without reasonable justification, to pay the bills of a medical provider; (2) An interpretation that permits a medical provider to bring a bad faith action against the insurance company may be inconsistent with the interests of the automobile accident victim—*i.e.,* the person whom section 8371 is intended to protect; and (3) If I were to allow providers to sue for bad faith, from an insurance company's standpoint section 8371 would become far more oppressive because of the possibility of numerous lawsuits brought by different entities seeking punitive damages based on the improper handling of claims arising out of a single injury. My analysis in *Taylor v. Nationwide Insurance Co.* is identical to the analysis in this case; in both cases, I determined that the legislature intended section 8371 to apply to any party who is similarly situated to a policyholder who has been denied coverage.

Finally, I recognize that the term "insured" is defined under 75 Pa.C.S. §1702 as an individual identified by name as an insured in the policy and a spouse or other relative of the named insured or a minor in the custody of either the named insured or relative of the named insured if residing in the household of the named insured.

An insurance company may argue that the legislature would have intended for the term "insured" in section 8371 to be defined in the same manner. This argument is not persuasive for at least two reasons. First, this definition of "insured" was part of the Motor Vehicle Financial Responsibilty Law before the enactment of the Act of February 7, 1990, P.L. 11, no. 6, which extensively amended the Motor Vehicle Financial Responsibility Law and otherwise altered insurance practices within the Commonwealth. Section 3 of this Act of February 7, 1990 provided for bad faith actions on

insurance policies as set forth at 42 Pa.C.S. §8371. Section 18 of this legislation provided for lower limits on charges for medical providers treating automobile accident victims and for peer review as set forth at 75 Pa.C.S. §1797. This legislation did not tinker with existing legislation; instead it created very different mechanisms for the payment of insurance benefits. Consequently, it is more reasonable to determine legislative intent by looking at the purposes of the 1990 legislation rather than provisions in the prior legislation.

Second, provisions within the Act of February 7, 1990 use the term "insured" in a broader fashion than the definition within section 1702. For example, the last two sentences of section 1797(a) state that providers shall not bill an "insured" directly or attempt to collect from the "insured" the difference between the provider's full charge and the amount paid by the insurer. It is clear from a reading of section 1797(a) that this term "insured" includes persons described in section 1713(a)(3) and section 1713(a)(4).

This is equally true with respect to provisions within section 1797(b). See b(2) which provides that an insurer, provider, or "insured" may seek a reconsideration of a PRO; b(3) which provides that an "insured" may not be billed for any treatment during the peer review process; and b(4) which provides that an "insured" may challenge before the court an insurer's refusal to pay for medical services, the reasonableness or necessity of which the insurer has not challenged before a PRO, with conduct considered to be wanton to be subject to a payment of triple damages "to the injured party."

Section 8371 is part of the 1990 legislation that amended the Motor Vehicle Financial Responsibility Law. Thus, if there is merit to the argument that the legislature intended the term "insured" within section

8371 to be construed consistently with the term "insured" within the Motor Vehicle Financial Responsibility Law, consistency would be determined by looking at how the term "insured" was used in the 1990 amendments to the Motor Vehicle Financial Responsibility Law. Under the 1990 amendments to the Motor Vehicle Financial Responsibility Law governing customary charges for treatment (section 1797(a)) and governing peer review challenges to reasonableness and necessity of treatment (section 1797(b)), the term "insured" includes the section 1713(a)(4) automobile accident victim.

For these reasons, I enter the following order of court.

### ORDER

On February 25, 1998, it is hereby ordered that the preliminary objections of Erie Insurance Company to plaintiff's amended complaint are overruled.